**THE FLUSH.** Appeal of **THOMPSON. BULK OIL TRANSPORTS, Inc., v. ROBINS DRY DOCK & REPAIR CO. et al.**

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 157.

1. **Appeal and error ⬦➟77(1)—Order substituting attorney is appealable.**

   An order making a substitution of attorneys finally determines the rights of the attorney for whom the substitution is made, and is one from which he can appeal.

2. **Attorney and client ⬦➟76(1)—Attorney can be discharged at any time without cause.**

   A client has the right to discharge his attorney at any time, either with or without cause.

3. **Attorney and client ⬦➟75(1)—Court can order substitution of attorney.**

   If a substitution of attorneys cannot be made by consent of both client and attorney, an order for such substitution must be obtained by making proper application to the court.

4. **Attorney and client ⬦➟75(2)—Fees of attorney discharged for cause will not be protected.**

   If an application for substitution of attorneys is based on the misconduct of the attorney, the court may direct an unconditional substitution, and order surrender of the papers without payment of the attorney's fees, leaving the attorney to bring an action to recover his fees.

5. **Attorney and client ⬦➟75(2)—Fees of attorney discharged without cause must be protected in order of substitution.**

   If a client, applying for an order substituting an attorney, brings no charges against the first attorney, but merely elects to have such substitution, the order for substitution should not be made, unless the fees of the attorney discharged are either paid or secured.

6. **Attorney and client ⬦➟75(3)—Order for substitution, preserving attorney's lien on possible recovery on cross-libel, is insufficient.**

   An order for substitution of attorneys, which merely preserved the lien of the first attorney for services already rendered by him on any amount that might be recovered by his client on the cross-libel, is insufficient to secure the payment of the attorney's fees.

7. **Attorney and client ⬦➟182(3)—Attorney has lien on client's papers.**

   An attorney has a lien on his client's papers, which have come into his possession in the course of his professional services.

8. **Attorney and client ⬦➟182(3)—Client cannot inspect papers held under discharged attorney's lien.**

   A client, who has discharged his attorney without cause and without paying him for the services rendered, has no right to inspect the papers held by the attorney under his attorney's lien, since to permit such inspection would be in effect to defeat the lien.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the Robins Dry Dock & Repair Company against the steamship Flush, with cross-libel by the Bulk Oil Transports, Inc., against Robins Dry Dock & Repair Company. From an order substituting Saul S. Myers for T. Langland Thompson as attorney for the plaintiff, the ousted attorney appeals. Order modified and affirmed.

See, also, 274 Fed. 133. Certiorari denied, Bulk Oil Transports v. Thompson, 256 U. S. ——, 42 Sup. Ct. 184, 66 L. Ed. ——.

⬦➟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The libelant is a New York corporation and is engaged in the business of ship repairing. Its shipyard is at the Erie Basin in the borough of Brooklyn in the city of New York. It filed its libel against the steamship Flush, in which it alleged that it had furnished materials and supplies, and performed work, labor, and services, in repairing the steamship, in the amount of $201,-971.31, which it avers is the reasonable value thereof. It claimed interest on that sum from July 30, 1918. It admitted that it had received in part payment $30,000, and claimed as the amount due and unpaid $171,971.31, with interest from the date before mentioned, and for this it asserted its right to a lien under the Act of June 23, 1910 (Comp. St. §§ 7783–7787).

The Bulk Oil Transports, Inc., hereinafter referred to as the claimant, as the owner of the steamship, filed an answer, in which it alleged that on September 12, 1917, the libelant entered into an agreement with it in writing, in which it covenanted to complete the work within 75 days thereafter, and that the work was not completed until August 20, 1918, 9 months and 26 days after the time specified. For this it claimed damages in the sum of $163,200. It claimed certain additional damages.

The claimant gave security in the sum of $185,000, through a bond executed by the National Surety Company, and one Christoffer Hannevig, who owned all or nearly all of the stock of the claimant, became the indemnitor on the bond. The security having been given, the claimant filed a cross-libel, in which it asked to have the libel filed by the Robins Dry Dock & Repair Company stayed under rule 53 of the Admiralty Rules (267 Fed. xx). Then on October 2, 1920, T. Langland Thompson, the appellant, was substituted as proctor for the claimant in the place and stead of Bullowa & Bullowa. On February 11, 1921, Hannevig was adjudicated a bankrupt and receivers were appointed. Shortly thereafter the attorneys for the National Surety Company asked Mr. Thompson, the appellant, to consent to a substitution of their firm as proctors for claimant. Mr. Thompson agreed to such substitution on the condition that his fee for services rendered be paid. His offer was not accepted.

On the 6th day of April, 1921, the receivers of Hannevig, through Saul Myers, moved for an order to compel Thompson to turn over to the receivers all papers in this suit, on the ground that the receivers hold all the stock of the claimant company. This motion was denied. 274 Fed. 133. On May 25, 1921, the National Surety Company made a motion for permission to intervene as a party respondent, on the ground that it was on the "stipulation for value" in the sum of $185,000. This motion was denied, and an opinion rendered.

On the 29th day of August, 1921, the claimant made a motion, through Saul S. Myers, for an order substituting said Myers as attorney for it. This motion was granted and entered on the 20th day of September, 1921. On the 21st day of September, 1921, appellant duly appealed from said order, and served and filed said motion of appeal, assignment of error, and bond for costs. The essential part of the order providing for the substitution of attorneys, and which is the order appealed from, may be found in the margin.[1] It provides for substitution of attorneys upon the condition that Mr. Thompson's lien is to attach to the proceeds of the cross-libel if any there shall be, and to the papers of the claimant. It also directs that the substituted Mr. Myers is to have access to all of the papers in the possession or under the

---

[1] "Ordered, that the said motion for substitution of attorneys be and the same hereby is granted, upon condition that the lien of T. Langland Thompson, Esq., the present attorney of the Bulk Oil Transports, Inc., attach to the proceeds of the cross-libel, if any there shall be herein, and to the papers of the Bulk Oil Transports, Inc.; and it is further ordered that Saul S. Myers be, and he hereby is, substituted in place of T. Langland Thompson as attorney herein of the Bulk Oil Transports, Inc., and that he shall have access to all of the papers in the possession or under the control of the said T. Langland Thompson, received from the Bulk Oil Transports, Inc., or from Christoffer Hannevig, or from Christoffer Hannevig, Inc., or from any other source. * * *"

control of the displaced attorney, and which the latter received from the claimant, or from any other source.

T. Langland Thompson, of New York City (Hans P. Treece, of New York City, of counsel), for appellant.

Spier Whitaker and Saul S. Myers, both of New York City, for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] Before this cause was heard upon the merits, a motion was made to dismiss the appeal, on the ground that the order from which the appeal was taken was not a final order, and therefore was not one from which an appeal would lie. We denied the motion and held the order appealable, in accordance with our decisions in In re Oceanic Steam Navigation Co., 204 Fed. 259, 124 C. C. A. 347, and in Cavalliotis v. La Fonciere de France et des Colonies, 272 Fed. 803. The order finally determined the appellant's rights as an attorney in the case. It is a complete determination of the question as to who shall act as the claimant's attorney, and it gave the right to the substituted attorney to inspect the papers upon which the removed attorney claims a lien, and the provision of the order directing a special master to determine the amount of the appellant's lien and report did not destroy the finality of the order.

In denying the motion to dismiss the appeal, we granted a stay of further proceedings until two days after the filing of the opinion in this court deciding the appeal. The case having been heard, we shall now dispose of it upon its merits.

This appeal raises two questions for the consideration of this court. The first is whether a litigant, during the course of a litigation, can displace his attorney, who has not misconducted himself, and substitute another attorney in his place and stead, without first paying or securing to him his fees and disbursements. The second question is whether a client or his attorney has the right to inspect the papers belonging to the client, but retained in the possession of the displaced attorney under the claim of an attorney's lien, without first paying or securing his fees.

In Everett. Clarke & Benedict v. Alpha Portland Cement Co., 225 Fed. 931, 938, 141 C. C. A. 55, this court had occasion to consider the validity of an order allowing the substitution of attorneys and the turning over of papers upon which the attorneys claimed a lien. We then stated that it could not be questioned that a client has the right to change his attorney at any stage of the proceeding and without assigning a reason, that he might make an application to the court to have a new attorney of record substituted and that the court might grant an order of subsitution, imposing such terms as might be justified under the circumstances to protect the rights of the attorney, if he be free from fault.

[2] That a client has the right to discharge his attorney at any time, either with or without cause, is clearly established law. Yates v. Milwaukee, 10 Wall. 497, 19 L. Ed. 984; Silverman v. Pennsylvania R.

Co. (C. C.) 141 Fed. 382; Kelly v. Horsely, 147. Ala. 508, 41 South. 902; Love v. Peel, 79 Ark. 366, 95 S. W. 998; Gage v. Atwater, 136 Cal. 170, 68 Pac. 581; Glover v. Dimmock, 119 Ga. 696, 46 S. E. 824; Wipfler v. Warren, 163 Mich. 189, 128 N. W. 178; Delaney .v. Husband, 64 N. J. Law, 275, 45 Atl. 265; In re Dunn, 205 N. Y. 398, 98 N. E. 914, Ann. Cas. 1913E, 536. Indeed, in Crosby v. Hatch, 155 Iowa, 312, 316, 135 N. W. 1079, the court declared that—

"No contract of employment can prevent a client from dismissing one attorney and entering into a new arrangement with another."

[3] If a substitution of attorneys cannot be made by consent of both client and attorney an order for such substitution must be obtained by making proper application to the court. Wilkinson v. Tilden (C. C.) 14 Fed. 778; Krekeler v. Thaule, 73 N. Y. 608.

[4] If the application for substitution is based on the misconduct of an attorney, it has been held that the court may direct an unconditional substitution, and order that he give up the papers without payment of his fees, and leave him to bring an action for his fees. Sloo v. Law, Fed. Cas. No. 12,958.

[5] But if the client brings no charges of misconduct against the attorney, but merely elects to have a substitution, the court will grant it imposing such terms as justice requires; and in such cases it is the general rule that a substitution will not be authorized, without providing that the fees and expenses of the displaced attorney shall be paid or secured to him, or his lien in some way preserved. In re Paschal, 10 Wall. 483, 19 L. Ed. 992; New York Phonograph Co. v. Edison Phonograph Co. (C. C.) 150 Fed. 233; Lanagan v. Wayne Circuit Judge, 170 Mich. 435, 136 N. W. 398; In re Dunn, supra. In the case last cited the New York Court of Appeals declared it—

"well settled that the courts will not enforce a substitution of attorneys, where the first attorney is without fault, unless the amount due the attorney for his services and expenditure is either paid or secured."

[6] As respects the first question involved, we have no difficulty in holding that the law is clearly established that an order providing for the substitution of attorneys, in a case where no professional misconduct is alleged, should not be made until or unless his fees for services rendered and expenses incurred have been paid or secured. The order appealed from is in our opinion invalid, as it provides for no such security. It simply provides that the attorney's lien shall "attach to the proceeds of the cross-libel," if any there shall be, and to the papers of the claimant. It is hardly necessary to point out that, if it should turn out that there should be no proceeds from the cross-libel, the security would amount to nothing. Moreover, the attorney to be displaced was not retained under an agreement for contingent fees. In this connection, however, we call attention to Du Bois v. Mayor, etc., of the City of New York, 134 Fed. 570, 69 C. C. A. 112, which was decided by this court, and which involved a substitution of attorneys, the original attorneys having been employed under a contract for fees contingent on their ultimate success in the litigation. A disagreement arose between the client and his attorneys. There was no allegation of

misconduct, and no proof whatever on which to predicate misconduct. The court below required the client to pay the attorneys originally employed a fair and reasonable compensation for the services already rendered as a condition of the substitution. This court declared that, although the complainant had an undoubted right to change his attorneys, it should be upon condition that he pay them fair remuneration for services already performed.

"The agreement here was that the attorneys should receive a contingent fee, dependent upon ultimate success; the complainant would deprive them of the opportunity to earn the contingent fee, and leave them dependent upon the efforts of other counsel, in whose selection they have had no participation, thus leaving them practically remediless."

The action of the lower court was affirmed.

So in New York Phonograph Co. v. Edison, supra, decided in the Circuit Court of the Southern District of New York, Judge Lacombe declared that—

"The proposition that a solicitor be secured merely by preserving his lien on the fruits of the litigation is preposterous."

He pointed out that, if the client should be so unfortunate as to place the case in incompetent hands, there might never be any of the fruits which the original solicitor might have produced, had the cause been left in his hands. He added that it was to guard against "such iniquitous results" that the courts exercise the power of supervision over orders of substitution.

[7] This brings us to a consideration of the second question, and that is whether the client has a right to inspection of the papers upon which his attorney claims a lien. The question assumes that an attorney has a lien for his fees upon his client's papers which have come into his attorney's possession in the course of his professional services. It is, of course, well-established law that such a retaining lien exists, both in England and in the United States. Such a lien was enforced in England as early as 1734. Ex parte Bush, 7 Viner's Abr. 74. And in 1779 Lord Mansfield, in Wilkins v. Carmichael, 1 Doug. 101, 104, declared that it was recognized in courts both of law and equity and was established on general principles of justice. In this country the federal courts have long held that such a lien exists, and that the attorney can retain them until his fees are paid. Finance Co. v. Charleston, etc., R. R. Co. (C. C.) 48 Fed. 45; Leszynsky v. Merritt (C. C.) 9 Fed. 688; In re Wilson & Creig (D. C.) 12 Fed. 235; In re Gillaspie, (D. C.) 190 Fed. 88, 91.

In Jones on Mortgages (3d Ed.) § 115, that writer states that the attorney has a lien on his client's papers for a general balance due him for services, not only in the suit or matter to which such papers relate, but for other professional matters. And the same writer in section 122 makes the following statement:

"The client has a right to change his attorney if he likes, but, if he does so, the law imposes certain terms in favor of the attorney, namely, that the papers in the suit cannot be taken out of his hands until his reasonable charges are paid. The things upon which he claims a lien are things upon which he has expended his own labor or money, and he should have a lien in

the same way as any other workman who is entitled to retain the things upon which he has worked until he is paid for his work."

Conceding, as we must, that the attorney has a lien until he has been paid or secured, the question is: Can the attorney, while the lien exists, be compelled to permit the client or his substituted attorney to inspect the papers? There does not seem to be much authority upon the subject. Rose v. Laughton, 1 Ves. & B. 369, and Commerell v. Poynton, 1 Swanst. 1, support the right to such inspection. These cases were decided by Lord Eldon, who later repudiated and overruled them in Lord v. Workleighton, Jac. 580, and in Newton v. Harland, 4 Scott, N. R. 769. In Lord v. Workleighton, Lord Eldon, in considering a motion for inspection, said:

"My present impression is that he [the attorney] ought to be able to make use of the nonproduction of the papers in order to get what is due him. I am now stating an opinion contrary to what I thought at the time when the cases cited were before me. I think it is better that the point should be settled, and I shall therefore consider of it with the Master of the Rolls and the Vice Chancellor."

The motion for permission to inspect was denied.

The English authorities seem to make a distinction between the case of a solicitor voluntarily withdrawing from a case and the case of a solicitor discharged by the client. Where the solicitor withdraws, the client, it is said, is entitled to an order for the delivery of the papers in the further prosecution of the action, and subject to their redelivery after the hearing. But, where the client discharges the solicitor, the latter is not under any obligation to produce the papers, or to allow the client to inspect them during the continuance of the lien. See Colegrave v. Manley T. & R. 400; In re Cameron's Coalbrook, etc., Ry., 25 Beav. 1; Brassington v. Brassington, 1 Sim. & S. 455; Wilson v. Emmett, 19 Beav. 233; Cane v. Martin, 2 Beav. 584. In Kemp v. King, 2 Moody & R. 437, a case at nisi prius, the point was expressly ruled by Lord Chief Justice Denman. See Jones on Liens, vol. 1, p. 115, note.

In this country there appears to be very little authority upon the question. In Davis v. Davis (C. C.) 90 Fed. 791 (1898), the attorney was served with a subpoena duces tecum to produce papers in his possession, which he held under an attorney's lien. He declined to produce them, and on a motion to punish him for contempt Judge Lowell stated that the client could not require his former counsel to produce papers upon which he claimed a lien. He said:

" * * * If an attorney's lien upon his client's paper amounts to anything, I think he may assert it against the client, even when summoned by him to produce the papers by a subpoena duces tecum. The value of the lien often lies almost altogether in the power to withhold the papers from use as evidence, and that the debtor client should be allowed by a subpoena duces tecum to make practically worthless his creditor's lien seems to me unjust."

[8] As a matter of principle, and without regard to authorities, it seems to us that a client's right to inspect the papers upon which the attorney's lien exists should be denied. His lien is a mere retaining

lien, and gives him only a right to retain them until his charges are paid. He has no right of sale, and his right of retention is valuable only in proportion as the papers are valuable to his client. The leverage which the possession of the papers affords depends upon how embarrassing to the client the possession of them by the attorney is. If the client is given the right to inspect the papers or to compel their production while the lien continues, it certainly impairs the value of the lien, as it diminishes the embarrassment caused by the attorney's retention of them, and might make them valueless to the attorney, and the lien nugatory. At the argument counsel gave a homely, but effective, illustration of this. He said that a blacksmith has a lien on a horse for its shoeing, and can retain possession of the horse. If he were compelled to let the owner have the use of the horse whenever he so desired, the blacksmith would simply be left with the privileges of feeding and caring for the horse.

In what has been said it must be understood that we have been discussing the right of the attorney to refuse inspection to his client or to one representing the client. Whether the attorney's lien on his client's papers goes to the extent of enabling the attorney to refuse to produce in court documents upon which he claims a lien, where the party demanding their production is a third person, and not the person against whom the lien is claimed, is an entirely different question from the one before us, and is one upon which it is unnecessary to express any opinion at this time. See Hope v. Liddell, 7 De Gex, M. & G. 331.

It is our conclusion that that part of the order which gives to the substituted attorney "access to all of the papers in the possession or under the control of the said T. Langland Thompson, received from the Bulk Oil Transports, Inc., or from Christoffer Hannevig, or from Christoffer Hannevig, Inc., or from any other source," is not justified by the authorities or according to sound reason.

The order for the substitution of attorneys should be granted only upon condition that the fees and disbursements due to T. Langland Thompson for professional services, rendered to the Bulk Oil Transports, Inc., be first paid or secured, and is so modified. It is further modified by striking out all that portion which requires the appellant to grant the substituted attorney access to the papers in the possession or under the control of the appellant, and which he received from "the Bulk Oil Transports, Inc., or from Christoffer Hannevig, or from Chrisoffer Hannevig, Inc., or from any other source." As so modified, the order is affirmed.