704 F.2d 681
 John J. POMERANTZ, Walter Leiter, Alan Golub, Fred Pomerantz
and Ralph Iannazzone, Plaintiffs-Counterclaim Defendants,
v.
Ira D. SCHANDLER, Carolina Erath 1978 Associates, Carolina
Erath 1979 Associates and Carolina Energy
Corporation, Defendants-Appellees,
and
M. Albert NISSIM, Defendant-Counterclaim Plaintiff,
v.
LESLIE FAY INC., Additional Counterclaim Defendant.
Golenbock and Barell, Movants-Appellants.
 No. 984, Docket 83-7034.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 18, 1983.
Decided April 8, 1983.
 
 Michael M. Meadvin, New York City (Arthur M. Handler, Golenbock and Barell, New York City, of counsel), for movants-appellants pro se.
 Howard I. Rhine, New York City (R. Jeffrey More, Kramer, Coleman & Rhine, New York City, of counsel), for defendants-appellees Carolina Erath 1978 Associates, Carolina Erath 1979 Associates and Carolina Energy Corp.
 Before MANSFIELD, OAKES and NEWMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 The law firm of Golenbock and Barell ("G & B"), a non-party which was defendant's former legal counsel not only in this lawsuit but with respect to other matters, appeals from two orders of the Southern District of New York entered by Judge Charles E. Stewart directing it, over its objection, to release to Kramer, Coleman & Rhine ("KC & R"), new counsel for all of the defendants except Ira D. Schandler, a large number of documents subject to G & B's attorney's lien for approximately $66,361 for unpaid services and disbursements in this lawsuit and other matters. We reverse and remand for further proceedings.
 
 
 2
 Beginning in 1977 G & B was retained as outside corporate counsel by various of the defendants and in November 1980 became counsel to the defendants in this lawsuit, in which a number of securities fraud claims are asserted against them. In the course of its general corporate representation of the defendants G & B created or came into possession of a large quantity of legal materials, including correspondence with defendants and others, legal memoranda, drafts and copies of offering materials, loan documents and closing binders prepared for securities offerings and transactions, all relating to the defendants' business. After the commencement of the present action G & B as litigation counsel maintained files relating to the case, including pleadings, correspondence, memoranda, research papers, and some 8400 photocopies of documents culled from defendants' files for use in responding to plaintiffs' motion under Fed.R.Civ.P. 34.
 
 
 3
 On November 18, 1982, G & B notified the defendants that because of their failure to pay charges of more than $66,361 for its legal services and disbursements (of which approximately $50,000 was for defense of the lawsuit), it had no choice but to withdraw as counsel. With the court's approval KC & R was substituted as counsel in the action and when it sought to obtain various files and papers held by G & B the latter asserted an attorney's lien. Defendants' request for an order directing G & B to turn over some of the documents was then presented to Judge Stewart, to whom the action had been assigned, for resolution. At an informal court hearing on December 10, 1982, at which no stenographic record appears to have been made, KC & R represented that the defendants were the subject of a grand jury criminal investigation being conducted by the United States Attorney for the Southern District of New York, in connection with which KC & R desired to have the 8400 photocopies of defendants' papers in G & B's possession for use in trying to persuade the U.S. Attorney not to seek an indictment and to defend against any charges that might be filed. Over G & B's objection the court orally directed turnover of the 8400 photocopies, which was done, on condition that G & B's attorney's lien be preserved.
 
 
 4
 On December 16, 1982, Judge Stewart signed an order presented by KC & R which was broader in scope than his oral direction; it ordered G & B forthwith to turn over to KC & R all files in G & B's possession "relating to the subject matter of" the grand jury investigation for use solely in connection with the investigation on the understanding that no photocopies be made, that the files be returned to G & B on completion of the investigation, and that the order not be construed as a release of G & B's attorney's lien. When G & B objected to the broad scope of the order the court modified it by a supplementary order providing that the files turned over must also be "relevant to this action" and denying G & B's application for a bond as a condition to turning over the documents. A 10-day stay was granted pending review by us.
 
 
 5
 The district court's two orders, being directed to non-parties, are appealable either as final orders as to them or under the doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-1226, 93 L.Ed. 1528 (1949). The issue before us, the nature and extent of an attorney's lien, is controlled by federal law. National Equipment Rental Ltd. v. Mercury Typesetting Co., 323 F.2d 784, 786 n. 1 (2d Cir.1963).
 
 
 6
 It is settled that an attorney may claim a lien for outstanding unpaid fees and disbursements on a client's papers which came into the lawyer's possession as the result of his professional representation of his client. In re San Juan Gold Inc., 96 F.2d 60 (2d Cir.1938). Upon substitution of counsel in litigation pending before it the court, absent evidence of misconduct on the part of former counsel, will normally, as ancillary to its conduct of the litigation, require a lawyer claiming a lien to turn over papers subject to the lien upon the client's payment of his outstanding charges or posting of adequate security for payment. National Equipment Rental, Ltd., supra, 323 F.2d at 786; The Flush, 277 F. 25 (2d Cir.1921), cert. denied, 257 U.S. 657, 42 S.Ct. 184, 66 L.Ed. 421 (1922). Indeed, we have held failure to impose such conditions to be an abuse of discretion, The Flush, supra, 277 F. at 28. Otherwise an unconditioned turnover would weaken the lien. Id. at 31. The purpose of the lien is to assist the attorney in preventing a client from refusing or failing to pay charges justly due. To permit a client in arrears to obtain the use of the papers would rob the lien of its intended force. As this court stated in In re San Juan Gold Inc., supra, 96 F.2d at 60-61:
 
 
 7
 "As explained in The Flush, supra, the right to retain the papers is valuable to the attorney in proportion as denial of access to them causes inconvenience to the client. Where the client or some one representing him has a pressing necessity for them, the court will order them delivered up upon condition that the fee be paid or security given for such sum as may be found to be due.... The attorney's lien cannot be disregarded merely because the pressure it is supposed to exert becomes effective. Cf. Davis v. Davis, 90 F. 791, C.C.Mass. If it is worth anyone's while to have the 77B proceedings continue and the papers are essential to that end, the necessary funds to obtain their release may be forthcoming; if not, the debtor and its trustee must do without them."
 
 
 8
 An exception to the foregoing may be made when the client has an urgent need for the papers to defend a criminal prosecution and will be seriously prejudiced by withholding of them but lacks the means to pay the lawyer's fee and disbursements; in that event the court may in its discretion, after balancing the conflicting interests, require the lawyer to release the papers on reasonable conditions. See ABA Committee on Professional Ethics, Informal Opinion No. 1461 (1980); Hauptmann v. Fawcett, 243 App.Div. 613, 276 N.Y.S. 523, modified, 243 App.Div. 616, 277 N.Y.S. 631 (2d Dept.1935) (former client now on trial for murder). Such a release may be ordered, however, only upon the client's making a clear showing of the need for the papers, the prejudice that would result from denying him access to them, and his inability to pay the legal fees or post a reasonable bond.
 
 
 9
 Applying these principles here, it is undisputed that G & B rendered extensive legal services to the defendants and incurred disbursements on their behalf, for which they failed to make payment, entitling G & B properly to assert its attorney's lien with respect to client's papers in its possession. However, there is no evidence other than the ipse dixit of KC & R that the papers are urgently needed to defend against a criminal prosecution of the defendants. At the time of argument no indictment or information had been filed and we have not been advised of any change in the situation since then. If, as was indicated by KC & R upon argument, the papers under G & B's lien are needed to persuade the U.S. Attorney not to seek an indictment, KC & R first was required to make a particularized showing of the nature of each of the government's specific claims of wrongdoing and the documents believed to contain exculpatory material with respect to those claims. The defendants are not entitled to the documents or to roam through G & B's files merely on their general statements that the papers might prove useful in negotiating with the government.
 
 
 10
 Assuming arguendo the existence of a particularized need for the papers, the record contains no information regarding the defendants' financial condition and specifically their ability to pay G & B's fees and disbursements or to post security pending any differences with respect to them. The district court erroneously rejected, without explanation or finding, G & B's request that a bond be posted.
 
 
 11
 For the foregoing reasons the district court's orders cannot on this record be upheld. Accordingly, we reverse and remand the case for further proceedings consistent with this opinion. Pending resolution of the factual issues, those papers turned over will promptly be returned to custody of G & B without any copies or summaries being retained by the defendants.
 
 
 12
 The mandate shall issue forthwith.