James I. WYNN, Jr., Plaintiff,

v.

AC ROCHESTER, GM CORPORATION, Charles S. Volvo, personally and in his capacity as Personnel Manager, Defendants.

No. 95–CV–6155L.

United States District Court, W.D. New York.

Nov. 10, 1997.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

James I. Wynn, Rochester, NY, pro se.

James C. Holahan, Harris, Beach & Wilcox, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, James I. Wynn, Jr. ("Wynn"), filed an action in state court against his former employer alleging fraud and misrepresentation. The action was removed to federal district court on March 31, 1995. At all times Wynn was represented by attorney Nira Kermisch ("Kermisch"). After disputes arose between Wynn and Kermisch, she moved to withdraw and the Court allowed withdrawal on September 5, 1997.

Kermisch declined to turn over her file on the matter and asserted a retaining lien because Wynn had failed to pay her attorney's fees and other costs relating to the action. The parties have both submitted papers on the application.[1]

---

1. Wynn filed two affidavits, one on October 6, 1997 (Dkt.# 19) and another on October 31, 1997 (Dkt.# 20), objecting to Kermisch's lien and disputing her entitlement to fees.

In addition, on October 31, 1997, Wynn filed a document entitled "Notice of Cross Motion" (Dkt.# 21) by which he seeks $250,000 for the alleged malpractice of Kermisch.

Such a "motion" is obviously defective if it is intended to state a separate claim for malprac-

tice against Kermisch. This Court has no jurisdiction to entertain a malpractice lawsuit against an attorney. If that is what plaintiff intends, he would have to file a separate lawsuit in state court. I note that such a claim would certainly appear to be premature at this stage, since plaintiff's lawsuit in federal court is still pending, and it is hard to understand how plaintiff has, at this stage, suffered any actionable harm by Kermisch's actions.

■ Although several courts have held that a federal court should look to the law of the state in which it sits in determining whether to enforce an attorney's lien, *Adams, George, Lee, Schulte & Ward, P.A. v. Westinghouse Elec. Corp.*, 597 F.2d 570, 573 (5th Cir.1979), *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1514 (11th Cir.1988), *Anderson v. Farmers Co-op. Elevator Ass'n, Inc.*, 874 F.Supp. 989, 991 (D.Neb.1995), the Second Circuit has held that federal law, not state law, applies to the issue of an attorney's lien. *Pomerantz v. Schandler*, 704 F.2d 681, 682 (2d Cir.1983). The court in *Pomerantz* did find that under federal law an attorney may claim a lien for outstanding unpaid fees and disbursements on a client's papers which come into the attorney's possession as a result of her professional representation of the client. Absent evidence of misconduct on the part of counsel, the court will normally require the lawyer claiming a lien to turn over the papers in her possession only upon the client's payment of the outstanding charges or posting of adequate security for payment. *Pomerantz, supra* at 683.

The Court also recognizes that there are exceptions, not applicable here, where the client has an urgent need for the papers to defend a criminal prosecution and that his case would be seriously prejudiced if the papers were not returned, especially if the client is unable to immediately pay the requested fee.

Additionally, in some federal cases, courts have declined to recognize an attorney lien where the action is prosecuted under a statute that allows for fee shifting. *See, e.g., Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir.1991); *Misek–Falkoff v. IBM*, 829 F.Supp. 660, 664 (S.D.N.Y.1993).

■ The present case involves a former employee who claims that he was entitled to certain benefits pursuant to a collective bargaining agreement. The case does seem to be governed by § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185. Although there is no fee-shifting provision under the Act, some federal courts have allowed attorney's fees although an equal number have not. *Int'l Brotherhood of Electrical Workers, Local No. 12 v. A–1*

*Electric Service, Inc.*, 535 F.2d 1, 4 (10th Cir.), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976)(attorney fees not available); *Dushaw v. Roadway Express, Inc.*, 816 F.Supp. 1229, 1239 (N.D.Ohio 1992)(attorney fees available where losing party acted in bad faith), *rev'd. on other grounds*, 66 F.3d 129 (6th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1353, 134 L.Ed.2d 521 (1996).

The nature of Kermisch's agreement with Wynn is vague to say the least. It appears that she was retained by Wynn's father, who had previously been represented by Kermisch on another matter. Kermisch concedes in her own affidavit that there was no retainer agreement, and that she did not discuss the method or amount of compensation with either Wynn or his father.

Wynn, for his part, represents that the only agreement was that Kermisch would be paid out of the proceeds obtained from the action, that is, that the arrangement was a contingent one. If that is the case, of course, Kermisch's entitlement to fees would have to abide the event and be resolved only if Wynn should prevail on the action. Lending some credence to Wynn's claim that Kermisch was retained on a contingency basis is the fact that it does not appear that Kermisch has ever submitted a bill to Wynn or his father for her services in the present case prior to submitting the bill that is contested here. Kermisch claims in her affidavit that fee arrangements were not discussed initially because she was more concerned with getting the action started before the statute of limitations expired. However, Kermisch had been representing Wynn on this matter for over two years prior to her withdrawal from the case. There is no indication that Kermisch ever discussed the amount and manner of compensation with Wynn at any point during her representation of Wynn on this matter. I find it somewhat surprising that Kermisch would represent Wynn on this matter for over two years with no retainer and without ever submitting a bill to Wynn, unless, as Wynn claims, the case was taken on a contingent fee basis. However, I leave the final decision regarding the type of fee

arrangement that existed between Kermisch and Wynn to another day.

The Court is concerned that these matters concerning payment of fees not unduly delay and prejudice Wynn's lawsuit here. Wynn does not now appear to be in a position to pay the entire fee and he disputes Kermisch's entitlement to a fee for the reasons set forth above. I believe the proper course, given the uncertainty surrounding the fee arrangement, is that Kermisch release the file, and all those matters which she has retained, as set forth in her affirmation dated September 26, 1997, on condition that Wynn, or his father, pay into Court the sum of $1,500 which will be held by the Court and applied to whatever fee Kermisch is later determined to be entitled to, should that be the case. This sum will not be disbursed without further order of the Court upon resolution of the fee issue either by agreement between the parties or before this Court after the resolution of the underlying action. I strongly recommend that, in the interim, the parties consider agreeing to submit their fee dispute to fee arbitration offered by the Monroe County Bar Association.

I find that in light of the circumstances here, especially where the nature of Kermisch's agreement is very much disputed, payment of the $1,500 into Court constitutes sufficient security and collateral to protect whatever retaining lien exists on this file for fees arguably payable to Kermisch. Final resolution of the fee matter, unless resolved by the parties, will be determined by the Court at the conclusion of the case.

I do find that Kermisch may assert a charging lien on the file of Wynn which should provide additional protection for her if plaintiff prevails and if it is determined that Kermisch is entitled to be compensated for her reasonable services from that award.

Apart from her fees, Kermisch claims that she has incurred out-of-pocket expenses in the amount of $362.50. Wynn is directed to reimburse Kermisch such sum prior to Kermisch's release of the file. The entire file must be turned over to Wynn within five (5) days of payment of the above-referenced $1,500 collateral to the court and payment of the $362.50 in costs directly to Kermisch.

Regardless of whether there was a written retainer agreement, it is clear that Kermisch has expended time and effort on the file and, unless it is determined that the fee arrangement was limited to a contingent fee arrangement, she would be entitled to be compensated on a *quantum meruit* basis, that is, payment for the reasonable value of services rendered.

## CONCLUSION

Attorney Nira T. Kennisch's application for imposition of a retaining lien on the papers and file of her former client, James I. Wynn, Jr., is granted but plaintiff may satisfy and discharge the lien by making payment to the Clerk of Court the sum of $1,500 as collateral and security for the retaining lien. Said sum will not be disbursed by the Court until further order of the Court, on notice to all parties.

Upon payment into Court of the $1,500 collateral, plus payment directly to attorney Kermisch for disbursements in the amount of $332, the retaining lien will be deemed satisfied, discharged and vacated.

Within five (5) days of the completed payments described above, attorney Kermisch is directed to turn over the entire file, as described in her affirmation of September 26, 1997 to plaintiff.

Plaintiff's cross-motion relating to a claim of malpractice is denied.

IT IS SO ORDERED.