**UNITED STATES of America**

v.

**Charles H. RINGWALT.**

**Criminal Action No. 01–192.**

United States District Court,
E.D. Pennsylvania.

June 28, 2002.

John J. Pease, Thomas R. Perricone, U.S. Attorneys Office, Philadelphia, PA, for plaintiff.

Jeffrey M. Kolansky, Lolansky and Strauss, P.C., Philadelphia, PA, John Rogers Carroll, Carroll & Carroll, Philadelphia, Pa, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. *DISCUSSION*

In April 1997, Charles Ringwalt, III ("defendant") retained the law firm of Carroll & Carroll, through John Rogers Carroll, Esquire, to represent defendant in a variety of criminal and quasi-criminal investigations relating to certain tax obligations defendant owed to the City of Philadelphia and to the Internal Revenue Service. On April 10, 2001, a federal grand jury returned an indictment against defendant, charging him with two counts of income tax evasion under 26 U.S.C. § 7201, three counts of willfully subscribing to false tax returns under 26 U.S.C. § 7206(1), and one count of aiding and assisting the preparation of false tax returns under 26 U.S.C. § 7206(2). The charges involved allegations of false and fraudulent personal and corporate income tax returns relating to the defendant's taxable income in 1994 and 1995 from Stelwagon Manufacturing Corporation ("Stelwagon"), in which defendant Ringwalt was the president and sole shareholder. On January 17, 2002, following a two-week jury trial, defendant was convicted on all counts.[1]

According to Carroll & Carroll, defendant discharged the law firm on April 16, 2002, advising them that defendant had retained Jeffrey M. Kolansky, Esquire, of the law firm of Kolansky, Tuttle & Rocco,

---

1. On January 18, 2002, bail was set at $250,000, requiring 10% or $25,000 to be posted within 21 days. After a bond hearing held on February 22, 2002, the court found that defendant failed to show cause why he could not post bail as directed and ordered the defendant taken into custody. The following day, defendant posted $25,000 in cash as bail. Defendant represented to the court that the bond money was secured through a third party surety.

P.C., to represent him in the instant criminal prosecution. Mr. Kolansky, however, did not immediately enter an appearance or request the court's permission to substitute counsel. In light of these circumstances, Carroll & Carroll prepared and filed defendant's brief in support of post-trial motions on April 19, 2002, as required by the court's scheduling order. On April 30, 2002, after a hearing on defendant's motion for permission to withdraw as counsel, the court granted the motion permitting Carroll & Carroll to withdraw from the case. Immediately following the conclusion of the hearing, and at the direction of the court, Mr. Kolansky filed a Notice of Appearance in the instant case.[2]

On May 22, 2002, Mr. Kolansky wrote Carroll & Carroll requesting production of defendant's entire file by 4:00 p.m. the following day. Carroll & Carroll responded that they would not turn over the file because the defendant had not paid his outstanding balance.[3] However, Carroll & Carroll informed Mr. Kolansky that it was willing to respond to specific requests for documents. It is undisputed that Mr. Kolansky did not make any further requests to Carroll & Carroll for documents between May 22, 2002 and the post-trial motion and sentencing hearing on June 20, 2002.[4]

At the June 20, 2002 hearing, Mr. Kolansky represented to the court that he did not have the file held by Carroll & Carroll and made an oral motion to permit defendant to inspect and copy defendant's file. The court issued a rule to show cause why the court should not order Carroll & Carroll to turn over defendant's file to Mr. Kolansky.[5] Carroll & Carroll submitted a response to the rule to show cause asserting a valid attorney retaining lien over defendant's file.

Between June 24, 2002 and June 27, 2002, the court held two in-person hearings and two telephone hearings, at which former counsel, present counsel, the government and the defendant himself, addressed the court on these issues. Pursuant to a court order of June 24, 2002, and without objection from Carroll & Carroll, Mr. Kolansky inspected the thirteen banker's boxes comprising defendant's file to determine what documents are needed to prepare for a supplementation of defendant's post-trial motions and sentencing. Thereafter, Mr. Kolansky represented to the court that the equivalent of one and a half boxes of materials held by Carroll &

---

2. At that hearing, Mr. Kolansky told the court that he was adopting the brief in support of defendant's post-trial motion filed by Carroll and Carroll and would not be requesting additional time to prepare for the post-trial motion and sentencing hearing scheduled for June 20, 2002.

3. Although no specific amount has been offered to the court, it is generally acknowledged that Carroll & Carroll have received substantial compensation for representing defendant over the course of these proceedings.

4. The court was copied on the May 22, 2002 letter. In response, the court informed counsel that copies of correspondence between parties were not to be directed to chambers. At the sentencing hearing, Mr. Kolansky in-

formed the court that he mistakenly understood the response by the court, regarding the practice of sending copies of communications between parties to the court, to mean that he was not to pursue gaining access to the documents in possession of Carroll & Carroll.

5. Mr. Kolansky stated that because he did not have access to defendant's file, he was uncertain whether there were any additional grounds to assert in support of post-trial relief. In light of this development, the court issued a short scheduling order for defendant to submit and the government to respond to supplemental post-trial motions. A hearing on any supplemental post-trial motions was scheduled for July 19, 2002 and the sentencing was continued to August 5, 2002.

Carroll are necessary to defendant's representation through the post-trial and sentencing stages. At a hearing on June 26, 2002, Mr. Kolansky provided the court with a list of specific categories of documents (i.e. "government discovery," "notes from interviews by investigators," and "letters from defendant and third parties to the lawyers") comprising the equivalent of one and a half boxes of materials defendant now seeks. Mr. Kolansky, on behalf of defendant, and Mr. Carroll, at the direction of the court, met on several occasions but were unable to work out a mutually acceptable method of providing for the payment of Carroll & Carroll's outstanding bill.

## II. *ANALYSIS*

The issue before the court is whether Carroll & Carroll should be required to make available for copying certain case-related files collected by Carroll & Carroll during the course of the legal representation of defendant in the instant criminal prosecution as to which Carroll & Carroll asserts a lien, as a result of defendant's failure to pay an outstanding bill for legal services rendered, and which may be helpful to new counsel in preparing for defendant's post-trial motions and sentencing.

■ Attorney retaining liens have long been recognized under Pennsylvania law. *See United States v. Fidelity Philadelphia Trust Co.*, 459 F.2d 771 (3d Cir.1972) (quoting *Laplacca v. Philadelphia Rapid Transit Co.*, 108 A. 612, 265 Pa. 304 (1919)). Lawyers can claim a lien on outstanding unpaid fees and disbursements on a client's papers in the attorney's possession as a result of representation of the client. *See Novinger v. E.I. DuPont de*

*Nemours & Co., Inc.*, 809 F.2d 212, 218 (3d Cir.1987). Specifically, Pennsylvania Rule of Professional Conduct 1.16(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as, . . . surrendering papers and property to which the client is entitled. . . . The lawyer may retain papers relating to the client to the extent permitted by other law." RULES OF PROFESSIONAL CONDUCT 1.16(d), 42 Pa.C.S.A.

Although courts have not expressly carved out any formal distinction between retaining liens asserted by lawyers against clients for failure to pay a fee in a civil as opposed to a criminal case, courts have recognized that the nature of the interests implicated in a civil case differ in some important respects from those in a criminal prosecution. *See, e.g., Pomerantz v. Schandler*, 704 F.2d 681 (2d Cir.1983). In a civil case, the interests are private involving largely the litigant and counsel. Resolution of these disputes is left primarily to the law of debtor-creditor relations. By contrast, a criminal case involves not only the debtor-creditor relationship between the lawyer and his client, but it also implicates the defendant's liberty interest and the interests of the public in maintaining the integrity of the criminal justice system and in a just outcome. Moreover, the court must protect the public's interest in finality by guarding against the prospect of collateral litigation, in the event that the defendant later claims that lack of access to his former lawyers's file deprived him of a fair trial or the effective assistance of counsel.[6]

The Second Circuit in *Pomerantz v. Schandler*, 704 F.2d 681 (2d Cir.1983) stat-

---

6. It is undisputed that defendant owes Carroll & Carroll a significant amount of unpaid fees. While Carroll & Carroll claim the outstanding balance owed is $79,000, the defendant only acknowledges owing $50,000 with the possibility that additional unpaid fees may equal up to $29,000.

ed a test to guide courts in balancing these competing interests.[7] "An exception to the foregoing [recognition of the attorney retaining lien] may be made when the client has an *urgent need* for the papers to defend a criminal prosecution and will be *seriously prejudiced* by withholding of but *lacks the means to pay the lawyer's fee and disbursements.*" *Id.* at 683 (emphasis added). Thus, under *Pomerantz*, a court may, after balancing the conflicting interests of the parties, counsel and the public, require former counsel to release papers maintained in the attorneys' file and as to which the attorney has asserted a retaining lien. *See id.*

█ Applying *Pomerantz* to this case, under the first prong, the court finds that the defendant has shown an urgent need for the papers. At a hearing held on June 26, 2002, Mr. Kolansky identified particular types of documents in the possession of Carroll & Carroll, by category, which are necessary and may be helpful to the preparation of defendant's upcoming post-trial motions and sentencing. Defendant's brief on these motions are due July 3, 2002. A hearing is scheduled for July 19, 2002. Moreover, the documents which have been identified were obtained by Carroll & Carroll from third parties, the defendant and the government during the course of this criminal investigation and prosecution. It is submitted by the defendant and counsel that none of the requested documents contain legal research and work product of

Carroll & Carroll. The first *Pomerantz* prong is thus satisfied in this case.

The second prong of *Pomerantz* addresses whether denying access to papers under an attorney lien would cause serious prejudice to the defendant. The court finds that the defendant has shown that, since Mr. Kolansky does not have access to documents which have been identified as necessary and helpful to his defense during the post-trial motion and sentencing stages of these proceedings, serious prejudice would result to the defendant if counsel is unable to adequately prepare for the hearings. The second *Pomerantz* prong is thus satisfied.

As to the third prong of *Pomerantz*, the lack of ability to pay the fees owed and due to Carroll & Carroll, the court finds that defendant lacks an immediate ability to pay. At this time, the defendant does not have the cash or cash equivalent necessary to satisfy Carroll & Carroll's bill in full in or in part. In addition, Mr. Kolansky has represented to the court that, although he has obtained security for future payments, defendant has only paid him $7,000.00 as a retainer and that while the retainer has been exhausted, future payments will come only from the liquidation of defendant's real estate assets and not from any current funds. Furthermore, defendant's company is currently in bankruptcy. Under these circumstances, the court finds that, under *Pomerantz's* third prong, defendant lacks an ability to pay the owed fee at this time.[8]

---

7. While the attorneys in *Pomerantz* asserting the retaining lien were corporate counsel to the defendant on corporate securities matters, they withheld documents which the client was seeking to defending himself in a criminal grand jury investigation. *Id.* at 682.

8. This does not mean that the defendant does not have the ability to pay the debt in the future. It does appear that subject to the future sales of certain properties, the defen-

dant can pay these debts and/or provide some security for future payment of the obligation to Carroll & Carroll. Although the defendant offered some security to Carroll & Carroll, it only allowed Carroll & Carroll security behind the interest of his current attorney. After discussions between defendant, Carroll & Carroll, and present counsel, the parties were unable to agree on adequate security.

Nor is Carroll & Carroll's interest in collecting the fee eviscerated by the release of copies of certain documents. Carroll & Carroll may, of course, attempt to collect the outstanding fee by, for example, suing for payment (which defendant acknowledges he largely owes to Carroll & Carroll) and, if appropriate under local law, seeking a *lis pendens* on properties owned by defendant. Under these circumstances, the court finds that the interest of the defendant in having access to Carroll & Carroll's file in pursuit post-trial motions and at sentencing, and the interest of the public in preserving the integrity of the criminal justice system, in finality and in a just result outweigh Carroll & Carroll's interest in enforcing its lien in the case file to the fullest extent.[9]

One final point is worthy of note. As one court has stated, and as this case exemplifies, "[o]rdinarily, the right to ... [a] retaining lien ... arises in civil cases. A lawyer who engages in criminal trials usually receives his fee or the bulk of it prior to actually coming into court.... Once a defendant is convicted there is small likelihood that he will ever be paid for his services. Such is a fact of life for the criminal practitioner." *People v. Altvater*, 78 Misc.2d 24, 355 N.Y.S.2d 736, 737 (N.Y.Sup.Ct.1974). To put it differently, criminal defense counsel who fails to collect a fee or to adequately secure its payment prior to the commencement of the

representation does so at his or her own financial peril.

### III. *CONCLUSION*

For the reasons stated above, Carroll & Carroll shall allow defendant's counsel to copy, at defendant's counsel's expense, the documents identified by counsel as being necessary and helpful to the defendant's case. The order is stayed for 24 hours to permit an opportunity for appeal.

---

9. Although the coercive agency of the lien is obviously affected by this order in that it removes the obvious incentive for immediate payment, Carroll & Carroll's lien over the file is not completely vitiated by the court's directive; rather, the court has allowed defendant to copy one and a half boxes of documents in a file totally thirteen boxes—less than 10% of the overall file. *See In re Garcia (New World Marketing Corp. v. Garcia)*, 76 B.R. 68, 69–70 (E.D.Pa.1987) ("since the law firm would still be permitted to retain possession of the documents, allowing [the client] to

gain access to the documents and learn their contents would not deprive the law firm of any benefit its lien confers vis-a-vis the client."); *Altvater*, 355 N.Y.S.2d at 738 ("While the right to permit defense counsel copy the papers may appear to negate the characteristics of a retaining lien, such is not the intention of the court nor the law. Where the surrender of papers, documents, etc., are pursuant to a court order, it is an involuntary surrender and the right to a lien is not extinguished.") (citations omitted).