**FEDERAL LAND BANK OF JACKSON IN RECEIVERSHIP, Plaintiff,**

v.

**FEDERAL INTERMEDIATE CREDIT BANK OF JACKSON and National Bank for Cooperatives, Defendants.**

**Civ.A. No. J89–0192(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

July 19, 1989.

Keith R. Raulston, Samuel E. Scott, Lawrence E. Allison, Jr., Cheri D. Green, Jackson, Miss., for defendants.

John C. Henegan, Anne V. Winter, Jackson, Miss., for plaintiff.

## MEMORANDUM OPINION
## AND ORDER

BRITT R. SINGLETARY, United States Magistrate.

This matter is before this Court on the amended motion filed in this action by the law firm of Brunini, Grantham, Grower & Hewes (the "Brunini Firm"), to quash or modify the deposition subpoena duces tecum served on it by the Plaintiff, Federal Land Bank of Jackson In Receivership ("FLBJR"), and for a protective order.

### Facts

The litigation in which this discovery dispute arises was filed by the FLBJR against the Federal Intermediate Credit Bank of Jackson ("FICBJ") and the National Bank for Cooperatives ("NBC"), which is successor in interest by merger to the Jackson Bank for Cooperatives ("JBC"). At issue in the litigation are the validity and enforceability of certain agreements entered into by the FICBJ, the JBC and the Federal Land Bank of Jackson ("FLBJ") prior to May 20, 1988, when a receiver was appointed for the FLBJ. The agreements in question are a certain Collateral Sharing Agreement dated October 16, 1987 and certain agreements or instruments which purport to grant to the FICBJ and the JBC security interests in assets of the FLBJ to secure its obligations under the Collateral Sharing Agreement.

Prior to the appointment of the receiver on May 20, 1988, the Brunini Firm from time to time represented the FLBJ, the FICBJ and the JBC in various specific matters in which the firm was retained as "outside counsel." In most instances, the matter involved only one of the institutions and the Brunini Firm was retained to represent only the affected institution. However, in some instances the matter involved more than one of the institutions and in those instances the Brunini Firm was retained to represent the affected institutions, jointly. In its opposition to the motion now before this Court, the FLBJR does not contend that the Brunini Firm represented all, or any, of these institutions in connection with the particular agreements at issue in this litigation.

The FLBJR's deposition subpoena duces tecum commands the Brunini Firm to produce the following documents:

[A]ny and all documents in its possession, custody or control that discuss, refer, [or] relate to any and all matters or transactions in which the Brunini firm jointly represented the FLBJ and the FICB, including but not limited to:

1. The proposed reorganization and merger of the FLBJ with the Federal Intermediate Credit Bank of Jackson ("FICB");

2. The sale of mineral interests owned by the FLBJ to the FICB; and

3. Any and all other matters or transactions in which the Brunini firm jointly represented the FLBJ and the FICB.

By its motion, the Brunini Firm requests this Court to quash or modify the subpoena, or to enter a protective order, on grounds that: (a) all of the documents sought by the subpoena are subject to a common law retaining lien which secures payment of the sum of $45,059.85 in fees for services rendered by the firm and cash advances made by the firm on behalf of the FLBJ prior to the appointment of the receiver; (b) although many of the documents sought by the subpoena are "owned" by the FLBJ, as the former client, many of the documents constitute the firm's work product and are "owned" by the firm; and (c) with respect to the documents which are "owned" by the firm, the

subpoena is objectionable in that it commands the firm to produce documents which may not be relevant to the subject matter involved in this action and may not be reasonably calculated to lead to the discovery of admissible evidence.

It is undisputed that the Brunini Firm filed a proof of claim in July, 1988, for the fees and cash advances which are the subject of the retaining lien it asserts, in accordance with the federal regulations governing the receivership of the FLBJ. Banks and Banking, 12 C.F.R. §§ 600.1, *et seq.* The firm has not received any notice that the amount of the claim will be contested by the receiver; however, the receiver's counsel in this action was unable to state whether such a dispute will arise in the future. Therefore, it is not known whether the amount of the fees and cash advances will be disputed.

### *Discussion*

#### A. *Jurisdiction*

 This Court's jurisdiction to determine whether the documents are subject to a valid common law retaining lien is the threshold issue which must be addressed. The Brunini Firm is not a party to this action and the fees and cash advances it claims from the FLBJR are the result of representation which has no connection with this action. The parties concede that this Court does not have jurisdiction in this action to decide a dispute, if one arises, over the amount of the Brunini Firm's claim. In fact, neither party has requested this Court to determine the amount owed the firm. This matter is before this Court solely because the documents in which the firm asserts a retaining lien have been subpoenaed by a party to this action for use in this action.

As will be discussed more fully below, a retaining lien is a possessory lien. If this Court does not address the issue of the lien, but orders the Brunini Firm to produce the documents to which the FLBJR would otherwise be entitled under the discovery provisions of the Federal Rules of Civil Procedure, the benefit of asserting the lien will be irretrievably lost to the firm. On the other hand, the FLBJR contends that the documents it seeks are relevant to this action and that its attorneys need the documents to protect its interests in this action. Therefore, it is apparent that the Brunini Firm is asserting a valuable right in documents which the FLBJR contends are pertinent to litigation properly before this Court.

The Brunini Firm and the FLBJR have cited only one authority which expressly discusses the issue of a court's jurisdiction to decide the validity and enforceability of an attorney's retaining lien under the circumstances present in this case and this Court has found no others. In *Jenkins v. Weinshienk*, 670 F.2d 915, 919 (10th Cir. 1982), the court held that when an attorney asserts a retaining lien in documents pertinent to litigation properly before the court, the court must have the power, and hence jurisdiction, to decide whether the attorney should be required to relinquish the documents to the party requesting them. The court further held that such power necessarily includes the jurisdiction to determine whether the attorney has a retaining lien and whether the lien is enforceable under the circumstances of the particular case. Finally, the court held that, "[a]djudicating the amount of fees owing between lawyer and client is not essential to determining the existence of an attorney's retaining lien." *Id.*

This Court finds that it has jurisdiction to determine the validity and enforceability of the retaining lien asserted by the Brunini Firm.

#### B. *Attorney's Retaining Lien*

The attorney's retaining lien has long been recognized under Mississippi law. *See, e.g., Collins v. Schneider*, 187 Miss. 1, 192 So. 20 (1939); *Webster v. Sweat*, 65 F.2d 109 (5th Cir.1933). In *Webster*, the court stated:

> At common law an attorney has a lien on all papers of his client which come into his possession in the course of his professional employment. This lien is not limited to the papers in any particular suit, but extends to the general bal-

ance due to the attorney for any and all professional services performed by him for his client. It is passive, and ordinarily cannot be enforced by any proceeding in court, but it entitles the attorney to retain possession until all his fees are paid. [Citations omitted].

*Id.* at 109.

■ Advisory Ethics Opinion No. 144 of the Mississippi State Bar, adopted March 11, 1988, ("Opinion No. 144") recognizes that, under the laws of most states, lawyers acquire attorney liens in the course of performing legal services. The Opinion notes that Rule 1.16 of the Mississippi Rules of Professional Conduct only requires a lawyer to surrender to his client (or, in this case, his former client) the papers and property to which the client is entitled. The Opinion further notes that the Rule recognizes the right of the lawyer to retain such papers to the extent permitted by law. The Opinion states:

> Thus, the issue is primarily a legal matter concerning the ownership of the items in the file and the legal enforceability of the attorney's lien. However, the ethical issue which the lawyer must weigh in the balance with his legal rights is at what point will the enforcement of his legal right breach his ethical duty under 1.16(d) to 'take steps to the extent reasonably practicable to protect a client's interest.' Each case will turn on its own facts, and it is not possible to anticipate each situation. Generally, if retaining the client's file prevents the client from obtaining another lawyer or from proceeding with his case in a timely manner, then the lawyer may have breached the ethical duty owed to the client.

Opinion No. 144. Under these authorities, this Court finds that the retaining lien asserted by the Brunini Firm is valid. In fact, the FLBJR concedes that such liens are valid under Mississippi law. The FLBJR contends, however, that the lien is not enforceable under the circumstances present in this case.

The FLBJR does not contend that it is financially unable to pay the Brunini Firm's claim. In fact, counsel for the FLBJR conceded in oral argument that the FLBJR has the financial ability to pay the claim. Instead, the FLBJR contends that it is legally prohibited from paying the claim under the provisions of Banks and Banking, 12 C.F.R. § 611.1174 (1988), which establishes the priority in which claims filed by creditors of the FLBJR for debts incurred prior to the appointment of the receiver are to be paid.

The priorities established by Banks and Banking, 12 C.F.R. § 611.1174 (1988) are: (a) first, all costs, expenses, and debts that were incurred by the receiver in connection with the administration of the receivership; (b) second, all claims for taxes; (c) third, all claims of creditors which are secured by specific assets of the bank, with priority of conflicting claims of creditors within the same class to be determined in accordance with priorities of applicable federal or state law; (d) fourth, claims of holders of bonds issued by the bank in receivership, individually, to the extent they are collateralized; (e) fifth, claims of holders of consolidated or systemwide bonds, and claims of other institutions of the Farm Credit System arising from their payments of those obligations made in accordance with applicable federal laws; and (f) sixth, all claims of general creditors.

The FLBJR contends that the Brunini Firm falls within the sixth priority, that of a general creditor, because its claim arose prior to the appointment of the receiver. Counsel for the FLBJR contended during oral argument that the third priority consists only of secured claims which have arisen since the appointment of the receiver. Apparently, both the Brunini Firm and the FLBJR believe that third priority creditors will be paid in full and that creditors in the sixth priority will likely receive no payments on their claims. Thus, the FLBJR argues that by paying the claim of the Brunini Firm to satisfy the retaining lien, it will be paying a creditor who will otherwise receive no payment under the regulation. Since it would appear that any claim, whether secured or unsecured, which has arisen since the appointment of the receiv-

er would be considered an administrative expense, entitled to first priority treatment, the Court must conclude that the third priority category for secured creditors must necessarily be applicable to secured creditors whose claims arose prior to the appointment of the receiver. The purpose of the retaining lien, like that of any other lien, is to secure payment of an indebtedness.

■ Further, the federal laws under which the receiver was appointed and under which the receivership is being administered do not invalidate any lien created under state law. Nor, is the receiver vested with the power to void any lien recognized under state law. Therefore, the retaining lien of the Brunini Firm was not invalidated, or otherwise affected, by the appointment of the receiver. Unless other considerations compel the firm to relinquish its lien, it is entitled to retain possession of its files unless and until its lien is satisfied. The regulation in question does not alter this conclusion.

It is not disputed that the files of the Brunini Firm sought by the subpoena are matters which have been concluded. The FLBJR states that it does not know the precise nature of the documents located in the firm's files. Thus, it cannot identify specific documents among those sought by the subpoena which it contends are essential to its claims or defenses in this action. The FLBJR contends, essentially, that it is entitled to review the documents described in the subpoena to determine whether they contain information which is relevant to its claims or defenses in this action. Counsel for the FLBJR further suggested in oral argument that it is conceivable information contained in the documents could reveal defenses, or claims in the nature of recoupment, of which the FLBJR is presently unaware.

■ It is recognized that a lawyer should forego his right to enforce a retaining lien when the former client lacks the means to pay the lawyer's fee and has an urgent need for the papers to defend a criminal prosecution or to assert or defend a similarly important personal liberty. *See,* *e.g., Pomerantz v. Schandler,* 704 F.2d 681 (2d Cir.1983); *Lucky–Goldstar Int'l v. International Mfg. Sales Co.,* 636 F.Supp. 1059 (N.D.Ill.1986). However, this principle has no applicability to the lien asserted by the Brunini Firm in this case, because the FLBJR is financially able to pay the fees and cash advances claimed by the firm. Further, this action does not involve a criminal charge or an important personal liberty such as that contemplated by this principle.

■ Even if this action involved a criminal charge, or were deemed to involve a similarly important personal liberty, this Court finds that the FLBJR has not made a sufficiently particularized showing of its need for the files to compel the Brunini Firm to relinquish its lien. In *Pomerantz, supra,* certain parties to the suit sought to obtain from the law firm which had previously represented them files and papers relating to its prior representation of the parties. The law firm asserted an attorney's lien to secure payment of fees and cash advances owed by the former clients. The former clients contended that they were the subject of an ongoing criminal investigation and that the files and papers were needed by their new attorneys to persuade the U.S. Attorney not to seek an indictment against them. The former clients offered no information regarding their financial condition and their ability to pay the fees secured by the lien or to post security pending resolution of any dispute concerning the fees. More important, the former clients did not sufficiently demonstrate the urgent need for the papers. For these reasons, the court held that the former clients had not made a sufficient showing to compel the law firm to relinquish its lien.

In discussing the showing which is required to invoke the principle and compel the relinquishment of the law firm's lien, the court stated:

> If, as was indicated by [the former clients] upon argument, the papers under [the law firm's] lien are needed to persuade the U.S. Attorney not to seek an indictment, [the former clients] first

[were] required to make a *particularized* showing of the nature of each of the government's specific claims of wrongdoing and the documents believed to contain exculpatory material with respect to those claims. The [former clients] are not entitled to the documents or to roam through [the law firm's] files merely on their general statements that the papers might prove useful in negotiating with the government.

(*Id.* at 683) (Emphasis in original). The FLBJR is financially able to pay the claim of the Brunini Firm. Further, the FLBJR has not made a particularized showing of the nature of the claims or defenses for which it seeks information, or the documents believed to contain information pertaining to those claims or defenses. Like the former clients in *Pomerantz*, the FLBJR has not made a sufficient showing to compel the Brunini Firm to relinquish its lien. Unless and until the firm's claim is paid to satisfy the lien, or a bond or other adequate security is posted for payment of the claim, the FLBJR is not entitled to the documents it seeks by the subpoena or to roam through the Brunini Firm's files merely on its general statements that the files and papers might prove useful in identifying or developing its claims or defenses in this litigation.

■ For the reasons stated above, this Court finds that the Brunini Firm has a valid and enforceable retaining lien in the files and papers sought by the FLBJR's subpoena. The lien is a possessory lien. It cannot be actively enforced through foreclosure proceedings. It rests entirely on the right to retain possession of the files and papers until the fees and cash advances secured by the lien is paid. *See, e.g., Webster,* 65 F.2d at 109; *Lucky-Goldstar,* 636 F.Supp. at 1061. Because the lien is possessory in nature, its effectiveness is destroyed if the former client is permitted to review or use the papers which are subject to the lien. For this reason, it has been stated that it is an abuse of discretion for a court to require the attorney to release the papers to his former client unless the client pays the fees and cash advances owed, or posts adequate security for payment of the claim secured by the lien. *See, e.g., Tri-Ex Enterprises v. Morgan Guar. Trust Co.,* 583 F.Supp. 1116 (S.D.N.Y.1984); *Pomerantz,* 704 F.2d at 683; *Lucky-Goldstar,* 636 F.2d at 1061-62. Therefore, this Court finds that the FLBJR is not entitled to review the documents and files in question, unless and until it pays the claim of the Brunini Firm or posts adequate security for payment of the claim.

### C. Ownership of the Documents

■ Upon payment of the Brunini Firm's claim and satisfaction of its retaining lien, or upon posting adequate security for payment of the claim, the FLBJR will be entitled to review and copy all documents in the firm's files which are the property of the FLBJR. This is so because those documents are "owned" by the FLBJR and it does not matter whether the documents are relevant to the subject matter involved in this litigation. However, any documents in the firm's files which are "owned" by the firm are subject to the discovery provisions of the Federal Rules of Civil Procedure. The Brunini Firm cannot be compelled to produce documents which are its property and which are privileged or which are not relevant to the subject matter involved in this litigation.

■ The FLBJR contends that all documents contained in the files are the property of the FLBJR. The Brunini Firm contends that its work product is its property and not the property of the FLBJR. Opinion No. 144, *supra,* states that the ownership of specific documents contained in the file is a matter of law. However, the Opinion further states:

This Committee concludes that the better-reasoned opinions generally recognize that to the extent the client has a right to his file, then his file consists of the papers and property delivered by him to the lawyer, the pleadings or other end product developed by the lawyer, the correspondence engaged in by the lawyer for the benefit of the client, and the investigative reports which have been paid for by the client. San Diego Bar Associa-

tion, 25 Dicta, May 1978 (Opinion 1977–3). *However, the lawyer's work product is generally not considered the property of the client, and the lawyer has no ethical obligation to deliver his work product.*

*Id.* (Emphasis added).

The FLBJR contends that the above quoted language of Opinion No. 144 is not applicable to the files of the Brunini Firm in this matter, because the Opinion responds to an inquiry concerning contingent fee contracts. The fees charged the FLBJ by the Brunini Firm were based upon agreed hourly rates. The FLBJR argues that a client pays for the attorney's work product when it pays fees based upon hourly rates, but it does not pay for the work product when the lawyer's fees are based on a contingent fee contract.

This Court recognizes that the Opinion responds to an inquiry concerning contingent fee contracts, but it does not agree that the ownership of the specific items contained in the file differs when the lawyer's fee is based upon agreed hourly rates. A contingent fee arrangement and an hourly rate arrangement are simply two different ways of calculating the lawyer's fee. The lawyer's obligations to the client are the same under both arrangements. The legal services which the lawyer provides to the client under an hourly rate arrangement are the same as those which a lawyer provides to his client under a contingent fee arrangement. Under both arrangements, the client is paying for the end result. Under both arrangements, the lawyer's work product is the tool used by the lawyer to reach the end result.

The opinion of the San Diego Bar Association which is cited in Opinion No. 144 makes no reference to a particular fee arrangement. It states that the documents in a typical client's file, which are owned by the client, are: (a) pleadings and other papers which are filed with the court, and which become part of the public record in the case, and (b) correspondence to the client, to the opposition and to witnesses, and correspondence which the attorney receives from the same. The San Diego opin-

ion characterizes these documents as the attorney's finished product, or responses to his finished product. The opinion states that such documents have been voluntarily and strategically exposed to public light by the attorney to further his client's interests. These are documents for which the client has paid, or for which the client can anticipate paying, and they are the type of document which both the attorney and the client expect to become the property of the client. San Diego Bar Association, 25 *Dicta,* May 1978, at 19 (Opinion 1977–3, n.d.), *reprinted in* The Digest Of Bar Association Ethics Opinions, No. 10651, at 91 (Supp.1980).

The San Diego opinion states that the documents in a typical client's file which are owned by the lawyer include "notes written by the attorney to himself preparatory to drafting other documents or as preparation for disposition or trial, or notes of interviews—all these typically characterized by their informality, candor, and containing mental impressions, conclusions, opinions, or legal theories." *Id.* With respect to these documents, the opinion states:

Such personal notes as are described above … are not the property of the client. This is so because the typical attorney-client relationship presupposes that the rough, blemished opinions of the attorney, whether or not reduced to writing, are the tools of his trade (likened to the tools of a carpenter) without which the attorney cannot construct the appropriate legal representation for which the client has retained him and which the client has every right to expect. Therefore, these … documents are ones to which the client has no entitlement.

*Id.* The Ethics Committee of the Mississippi State Bar Association agreed with the rationale of the San Diego Bar Association. This Court also agrees with that rationale and finds that there is no rational basis for making the distinction between contingent fee arrangements and hourly rate arrangements which the FLBJR urges in this matter. The rationale is equally applicable to

both contingent fee arrangements and hourly rate arrangements.

The FLBJR contends that when a lawyer represents a client on an hourly rate arrangement, all notes, internal memoranda, etc., contained in the file constitute investigative reports for which the client has paid. Again, this Court cannot agree. The rationale of the San Diego Bar Association (adopted by the Mississippi State Bar Association) and the distinction it makes between the documents which are the property of the client and those which are the property of the lawyer precludes defining investigative reports in the manner urged by the FLBJR. This Court finds that the investigative reports which become the property of the client are the final reports which are delivered to the lawyer and which are prepared by persons whose fees are paid directly or indirectly by the client, such as appraisal reports, expert witness reports, etc. Any reports which the lawyer prepares for, and sends to, the client to inform the client of the result of his investigation of facts, or his research of legal issues, would be considered the lawyer's end product, and would become the property of the client. Notes taken by the lawyer or others in his firm in conducting such investigation or research, notes made by the lawyer in preparation for or while attending a deposition or a trial or meetings, internal memoranda and other documents prepared by the lawyer for his use in providing services to his client constitute the lawyer's work product and are property of the lawyer. Likewise, preliminary drafts of contracts, briefs, opinions, pleadings and other documents, the final drafts of which constitute the lawyer's end products, are the lawyer's work product and are property of the lawyer.

### D. Conclusion

(1) The attorney's retaining lien asserted by the Brunini Firm is valid and enforceable.

(2) The Brunini Firm's motion to quash the deposition subpoena duces tecum served on it by the FLBJR is denied, but the denial of the motion is conditioned on the FLBJR's payment of the firm's claim or its posting adequate security for payment of the claim, as provided herein.

(3) Within fifteen (15) days after entry of this order, the FLBJR shall pay the claim of the Brunini Firm, or if the claim is disputed it shall post a bond with this Court in the amount of $45,059.85 for payment to the firm of such sum as the parties may ultimately agree upon in writing or such sum as a court of competent jurisdiction may determine to be due. Such bond shall be in a form, and written by an entity, satisfactory to the Clerk of this Court. Such bond shall provide for payment to the Brunini Firm of such amount as shall be ordered by this Court, which order will be issued upon presentation to this Court of a written agreement entered into by the parties or a judgment or order of a court of competent jurisdiction by which the amount due the firm has been determined. If the FLBJR posts such a bond, rather than pay the claim, a true and correct copy of the bond which is filed in this proceeding shall be served on the Brunini Firm. If the FLBJR does not pay the firm's claim and does not post a bond for payment of the claim within the time provided by this order, then the firm's motion to quash the deposition subpoena duces tecum shall be granted, and this Court will immediately enter an order to that effect.

(4) Within fifteen (15) days after receipt of payment of its claim, or receipt of a true and correct copy of a bond posted by the FLBJR in accordance with this order, the Brunini Firm shall produce for inspection by the FLBJR or its attorneys those documents described in the subpoena which are the property of the client, as such property is described herein. The FLBJR shall be entitled to obtain copies of such of these documents as it wishes to obtain. In accordance with the prior agreement of the parties, the FLBJR shall pay the Brunini Firm the sum of twenty-five cents ($0.25) per page for each copy it obtains, in payment for expenses incurred by the firm in providing such copies.

(5) Within fifteen (15) days after receipt of payment of its claim, or receipt of a true

and correct copy of a bond posted by the FLBJR in accordance with this order, the Brunini Firm shall transmit to this Court, for *in camera* inspection, those documents described in the subpoena which are the property of the firm, as such property is described herein, noting with respect to each such document any objection the firm wishes to make under the rules of discovery to its being requested to produce the document in this action. This Court reserves ruling on any such objections pending its *in camera* inspection.

SO ORDERED.