# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| TCV VI, L.P., TCV MEMBER FUND, L.P., and CONTINENTAL INVESTORS FUND LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>TRADINGSCREEN INC., PHILIPPE BUHANNIC, PIERO GRANDI, PIERRE SCHROEDER, and PATRICK BUHANNIC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 10164-VCL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Date Submitted: February 23, 2018
Date Decided: April 23, 2018

Gregory V. Varallo, Richard P. Rollo, Kevin M. Gallagher, Sarah A. Galetta, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Attorneys for Plaintiffs TCV VI, L.P. and TCV Member Fund, L.P.*

Kevin G. Abrams, April M. Kirby, ABRAMS & BAYLISS LLP, Wilmington, Delaware; *Attorneys for Plaintiff Continental Investors Fund LLC*.

Philippe Buhannic, New York, New York; *Pro Se Defendant*.

Patrick Buhannic, New York, New York; *Pro Se Defendant*.

Colm F. Connolly, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; *Attorney for Defendants TradingScreen Inc., Piero Grandi, and Pierre Schroeder*.

Kenneth J. Nachbar, Megan Ward Cascio, Richard Li, Thomas P. Will, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Former Attorneys for Defendants*.

**LASTER, V.C.**

Defendants Philippe and Patrick Buhannic previously moved for an order compelling their former counsel—Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols")—to provide them with a copy of their litigation file. I granted the motion, and Morris Nichols produced what the firm believed it was obligated to provide. The Buhannics have now moved to compel production of Morris Nichols' entire litigation file and to penalize the firm for not producing the entire file previously. In passing, the Buhannics ask to lift the stay currently governing the case. This decision orders additional production and otherwise denies the motion.

## I.    FACTUAL BACKGROUND

The facts are drawn from the pleadings, prior decisions in this case, the motions under consideration, and the documents submitted in connection with those motions. The factual background in this decision does not represent findings of fact in the traditional sense, but rather how the relevant record appears at this stage.

### A.    The Parties

Defendant Philippe Buhannic is a founder of TradingScreen Inc. (the "Company"). He previously served as its CEO and Chairman of the Board. His brother, defendant Patrick Buhannic, also previously served as a director of the Company. Because the Buhannics share the same last name, this decision refers to them by their first names to avoid confusion. No disrespect is intended.

The two other defendants are Piero Grandi and Pierre Schroeder. They remain directors of the Company. They have not taken any position on the Buhannics' request to compel Morris Nichols to produce its entire litigation file.

Plaintiffs TCV VI, L.P., TCV Member Fund, L.P., and Continental Investors Fund LLC own shares of preferred stock in the Company. They have not taken any position on the Buhannics' request to compel Morris Nichols to produce its entire litigation file. They oppose the Buhannics' request to lift the stay.

**B.      The Underlying Litigation**

The plaintiffs filed this action in 2014. They contended that the Company had breached its obligation to redeem their preferred stock and that the Buhannics, Schroeder, and Grandi had not acted in good faith when determining that the Company only had sufficient funds legally available to redeem a small amount of their preferred stock. In the alternative, the plaintiffs contended that the Buhannics, Schroeder, and Grandi had breached their fiduciary duties when determining how much of the preferred stock to redeem. The plaintiffs contended that Phillippe made a bad faith determination to preserve his control over the Company, that Patrick supported Phillippe out of loyalty to his brother, and that Grandi and Schroeder were beholden to Phillipe.

The case proceeded through discovery, and trial was held in February 2016. Morris Nichols represented all of the defendants through trial.

During post-trial briefing, a majority of the members of the Company's board of directors (the "Board") comprising Grandi, Schroeder, and two non-party directors, placed Philippe on leave from his position as CEO. Philippe refused to accept this decision, and the Buhannics attempted to take action as stockholders to reconstitute the Board. The four directors who had placed Buhannic on leave filed a separate lawsuit in this court pursuant

2

to Section 225 of the Delaware General Corporation Law to determine the proper composition of the Board and whether Philippe remained CEO.[1]

The action taken by a majority of the Board to place Philippe on leave had implications for this case. The complaint challenged decisions taken by a Board majority comprising the Buhannics, Schroeder, and Grandi, and the plaintiffs contended that Schroeder and Grandi were beholden to Phillippe. Now, a new Board majority that included Schroeder and Grandi had taken employment-related action against Phillipe. Schroeder and Grandi's participation in that decision had implications for the evidence presented at trial to demonstrate that they were beholden to Phillippe. It also seemed possible that a majority of directors might be in a position to negotiate a settlement with the plaintiffs.

On May 23, 2016, the plaintiffs moved to stay this action so that the parties could work towards a settlement.[2] Grandi and Schroeder supported the motion, and I granted it.[3]

The parties subsequently began negotiating a potential settlement. During the negotiations, the Buhannics took positions adverse to Schroeder and Grandi.

---

[1] *See Schroeder v. Buhannic*, C.A. No. 12328-VCL (the "Section 225 Action").

[2] Dkt. 273.

[3] Dkt. 275.

3

Because of the conflict between their clients, Morris Nichols withdrew as counsel to the Buhannics.[4] Morris Nichols advised the remaining defendants that it could not participate in any communications about the settlement.

After Morris Nichols withdrew, the parties other than the Buhannics reached an agreement in principle to settle the case. The Buhannics objected to the settlement and contended that it could not be implemented over their objection.

## C.     Proceedings In New York

In July 2016, the Buhannics filed a civil action against the Company and the other members of the Board in the New York State Supreme Court (the "New York Action"). The complaint in the New York Action asserted claims for breach of fiduciary duty against the other directors. It also challenged aspects of the Company's capital structure.

The Buhannics also commenced an arbitration in New York against the Company and the other members of the Board (the "New York Arbitration"). The Buhannics contended in the New York Arbitration that the respondents had breached their obligations under a document that the parties referred to as the Founders' Agreement.

In February 2017, the court in the New York Action issued a preliminary injunction enjoining the Company from issuing additional shares that could dilute the Buhannics' position. The New York Action remains pending.

---

[4] Dkts. 276-77.

In July 2017, a panel in the New York Arbitration ruled against the Buhannics. The Buhannics promptly filed an action in the United States District Court for the Southern District of New York challenging the panel's decision. That action remains pending.

## D.     The Buhannics Seek Their Litigation File.

On March 2, 2017, I asked the parties for a status report.[5] The plaintiffs described the agreement in principle to settle this litigation, which included an amendment to the Company's certificate of incorporation. The plaintiffs expressed concern about implementing the settlement in light of the injunction in the New York Action, so they asked to continue the stay.[6] I entered an order granting this relief.[7]

By letter filed April 24, 2017, Philippe objected to the stay.[8] He also asserted for the first time that Morris Nichols had refused to provide its litigation file. His letter asked me to compel Morris Nichols to produce the file. Morris Nichols filed a responsive letter explaining that the other defendants had asserted attorney-client privilege over the contents of the file.[9] Both Buhannics subsequently filed letters reiterating their demands.[10] By order

---

[5] Dkt. 278.

[6] Dkts. 279-80.

[7] Dkt. 281.

[8] Dkt. 283.

[9] Dkt. 284.

[10] Dkts. 287-88.

dated May 30, 2017, I denied their request and required that they seek any relief by formal motion.[11]

Six months later, on October 26, 2017, Philippe filed a motion styled "Philippe Buhannic and Patrick Buhannic's Motion for Court to Lift the Order Staying Action and Direct Former Counsel to Hand Over a Copy of Litigation File to Philippe Buhannic."[12] The parties briefed the motion. By order dated December 21, 2017, I denied the motion to lift the stay.[13] In a second order issued on the same day, I granted the motion to compel Morris Nichols to produce the litigation file (the "Litigation File Order").[14] The Litigation File Order directed Morris Nichols to "deliver a copy of the file to the Buhannics within 10 days."[15]

## E.      The Current Motion

On December 27, 2017, Morris Nichols emailed the Buhannics a link to a secure website where they could access 5,316 documents. That production included:

1. All pleadings in *TCV VI, L.P. v. TradingScreen, Inc.*, Del. Ch. C.A. No. 10164-VCL.

2. All invoices submitted to TradingScreen in connection with the foregoing action.

---

[11] Dkt. 289.

[12] Dkt. 293.

[13] Dkt. 307.

[14] Dkt. 306.

[15] *Id.* ¶ 9.

3. All emails in the possession of Morris Nichols to, from or cc'd [sic] to any of the TradingScreen directors it represented: (Phillip [sic] Buhannic, Piero Grandi, Pierre Schroeder, Patrick Buhannic); any person with a TCV email address (i.e., Robert Trudeau, Ric Fenton), Frank Placenti (a TCV board designee); anyone with an rlf.com email address; anyone with an abramsbayliss.com email address; anyone with a kasowitz.com email address.[16]

The emails included several iterations of a term sheet for the agreement in principle to settle the case.[17]

The Buhannics were dissatisfied with that production. On January 8, 2018, they filed a motion styled "Philippe Buhannic and Patrick Buhannic's Motion for Court to Lift the Order Staying Action and Direct Former Counsel to Hand Over a Copy of Litigation File to Philippe Buhannic."[18] It largely repeated *verbatim* the contents of the previous motion to compel production of the litigation file. It added an assertion that Morris Nichols had failed to produce its entire litigation file and a specific request that Morris Nichols produce the "COMPLETE litigation [file]" including "all currently missing documents pertaining to this case, especially the agreement between the Board members, TradingScreen Inc. and TCV."[19] The motion asked "the court to penalize Morris Nicholls [sic] in a way that is appropriate."[20]

---

[16] Dkt. 311 ¶ 2.

[17] *Id.* ¶ 3.

[18] Dkt. 309.

[19] *Id.* ¶ 15.

[20] *Id.* ¶ 16.

7

The plaintiffs filed a response in which they opposed the motion to lift the stay.[21] Morris Nichols filed a response in which it opposed the request for production of its complete litigation file and the imposition of any penalty.[22] In its response, Morris Nichols argued that its production satisfied the Litigation File Order. It further argued that the Buhannics really only wanted a copy of the agreement in principle to settle this litigation. Morris Nichols submitted an email dated January 12, 2018, in which Philippe stated, "Please do not forget what we requested yet again which is the agreement you[] [r]eceived between TCV, [Grandi, Schroeder] and the company. Nothing else is important to us."[23]

Morris Nichols subsequently provided the Buhannics with a CD-ROM containing its prior production. Morris Nichols also provided the Buhannics with an index of the materials on the CD-ROM. In the transmittal letter for the CD-ROM, Morris Nichols offered to provide printed copies of the documents at the Buhannics' expense. Morris Nichols also represented that it did not have a copy of the agreement in principle.[24]

On February 19, 2018, the Buhannics filed what appears to have been intended as a reply in support of their motion. The document was titled "Philippe Buhannic and Patrick Buhannic's Motion for Court to Compell [sic] Former Counsel to Hand Over a Complete

---

[21] Dkts. 312, 314.

[22] Dkt. 310.

[23] Dkt. 311 Ex. B.

[24] Dkt. 316 Ex. B ("As we have previously advised you, we do not have, and have never seen, a signed agreement to resolve the dispute between TradingScreen and TCV. Indeed, we do not know if such an agreement exists.").

8

Copy of Litigation File to Philippe Buhannic."[25] Its contents were substantially identical to the earlier motion. It added as an exhibit a list of purported unethical acts by Morris Nichols. Morris Nichols has responded to those allegations.[26]

## II.  LEGAL ANALYSIS

The principal issues raised by the Buhannics' motion are whether Morris Nichols must produce its complete litigation file and, if so, whether Morris Nichols should be penalized for not producing it earlier. In passing, the Buhannics ask that I lift the stay, but they have not devoted any meaningful discussion to this point or supported their request with any non-conclusory arguments. The reasoning in my previous order maintaining the stay remains applicable.[27] This decision does not consider the stay further.

### A.  The Production Of The Entire File

The Litigation File Order found that "Morris Nichols is obligated to provide a copy of the litigation file to the Buhannics."[28] The order held that "Morris Nichols shall deliver a copy of the file to the Buhannics within 10 days."[29] The Litigation File Order did not delve into the niceties of what constituted the "litigation file."

---

[25] Dkt. 315.

[26] Dkt. 316.

[27] *See* Dkt. 307.

[28] Dkt. 306 ¶ 8.

[29] *Id.* ¶ 9.

9

The parties have not identified any Delaware authorities addressing the scope of the materials that former counsel must produce to a former client upon request. Rule 1.16(d) of the Delaware Lawyers' Rules of Professional Conduct states:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.[30]

Unfortunately, neither the text of the rule nor the commentary explains what constitutes the "papers and property to which the client is entitled."

"The Delaware Rules of Professional Conduct are patterned after the ABA Model Rules of Professional Conduct."[31] Decisions reached in other jurisdictions that have adopted the Model Rules therefore provide persuasive authority for determining what materials the law firm must provide. Unfortunately, there is a split in authority among other jurisdictions.

---

[30] Del. Lawyers' R. Prof'l Conduct 1.16(d); *see also In re Carmine*, 559 A.2d 248, 252 (Del. 1989) (finding that attorney violated Rule 1.16(d) by "fail[ing] to surrender his file to [successor counsel] on numerous occasions"); *In re Higgins*, 565 A.2d 901, 905 (Del. 1989) (finding that attorney "failed to surrender papers and property to which his client was entitled upon termination of representation in violation of [Rule] 1.16(d)").

[31] *In re Estate of Waters*, 647 A.2d 1091, 1096 (Del. 1994).

The majority rule among other jurisdiction is the "entire file" approach.[32] Many federal courts that have confronted the question in the absence of governing state law authority also have adopted the entire-file approach.[33] The *Restatement (Third) of the Law Governing Lawyers* likewise embraces the entire-file approach.[34]

The entire-file approach is just what it sounds like. As described in the *Restatement*, this approach means that "[o]n request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse."[35] Commentary clarifies that "a client is entitled to retrieve documents in possession of a lawyer relating to representation of the client. That right extends to documents placed in the lawyer's possession as well as to documents

---

[32] *Swift, Currie, McGhee & Hiers v. Henry*, 581 S.E.2d 37 (Ga. 2003); *Iowa Supreme Court Attorney Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812 (Iowa 2007); *Averill v. Cox*, 761 A.2d 1083 (N.H. 2000); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 689 N.E.2d 879 (N.Y. 1997); *Maleski v. Corporate Life Ins. Co.*, 641 A.2d 1 (Pa. Commw. Ct. 1994); *see also* State Bar of Ariz., Ethics Op. 04-01 (2003); Alaska Bar Ass'n, Ethics Op. 2003-03 (2003); Colo. Bar Ass'n Ethics Comm., Formal Op. 104 (1999); D.C. Bar, Ethics Op. 333 (2005); Or. State Bar, Formal Op. 2017-192 (2017); Va. State Bar, Comm. Op. 1366 (1990).

[33] *See, e.g.*, *In re Black Diamond Mining Co, LLC*, 507 B.R. 209 (E.D. Ky. 2014); *In re ANR Advance Transp. Co., Inc.*, 302 B.R. 607 (E.D. Wis. 2003); *Resolution Tr. Corp. v. H----, P.C.*, 128 F.R.D. 647 (N.D. Tex. 1989); *In re Touch Am. Hldgs., Inc.*, 2009 WL 1393078 (Bankr. D. Del. 2009).

[34] *Restatement (Third) of the Law Governing Lawyers* § 46(2) (Am. Law. Inst. 2000).

[35] *Id.*

11

produced by the lawyer."[36] The *Restatement* recognizes narrow exceptions for (i) situations "when compliance would violate the lawyer's duty to another," (ii) cases of "extreme necessity," such as where the disclosure "is likely to cause serious harm" to the client, and (iii) "certain law-firm documents reasonably intended only for internal review, such as a memorandum discussing which lawyers in the firm should be assigned to a case."[37]

Courts adopting the entire-file approach have generally reasoned along two lines. First, they find that the approach best comports with the duty owed by a lawyer to his or her client.[38] Second, they find that the approach is consistent with the client's property interest in his or her file.[39]

---

[36] *Id.* § 46 cmt. c.

[37] *Id.*

[38] *See, e.g.*, *Swift*, 581 S.E.2d at 40 ("[T]he majority view fosters open and forthright attorney-client relations. An attorney's fiduciary relationship with a client depends, in large measure, upon full, candid disclosure."); *Gottschalk*, 729 N.W.2d at 820 ("We agree with the majority of jurisdictions and adopt the 'entire file' approach to this issue. Attorneys are in a fiduciary relationship with their clients requiring open and honest communication to ensure effective representation."); *Sage Realty*, 689 N.E.2d at 882-83 ("That obligation of forthrightness of an attorney toward a client is not furthered by the attorney's ability to cull from the client's file documents generated through fully compensated representation, which the attorney unilaterally decides the client has no right to see.").

[39] *See, e.g.*, *Averill*, 761 A.2d at 1092 ("[A] client's file belongs to the client, and upon request, an attorney must provide the client with the file."); *Sage Realty*, 689 N.E.2d at 882 ("[W]hen the attorney's file is sought in connection with a pending matter, courts . . . have refused to recognize a property right of the attorney in the file superior to that of the client.").

A minority of jurisdictions follow the "end product" approach.[40] This approach distinguishes between the lawyer's external work product, which the client has a right to obtain, and the lawyer's internal work product, which the client does not have any right to receive. A lawyer's external work product includes documents that "have been voluntarily and strategically exposed to public light by the attorney to further his client's interests," such as "pleadings and other papers which are filed with the court" and "correspondence to the client, to the opposition and to witnesses, and correspondence which the attorney receives from the same."[41] The lawyer's internal work product includes those documents "typically characterized by their informality [and] candor, and containing mental impressions, conclusions, opinions, or legal theories," such as "notes written by the attorney to himself prepatory to drafting other documents or as preparation for deposition or trial, or notes of interviews."[42]

Jurisdictions embracing the end-product approach cite a perceived "tension between protecting the interests of the client and protecting the interests of the attorney in the work

---

[40] *See Fed. Land Bank of Jackson in Receivership v. Fed. Intermediate Credit Bank of Jackson*, 127 F.R.D. 473, 479 (S.D. Miss.) (magistrate decision), *aff'd in part, rev'd in part*, 128 F.R.D. 182 (S.D. Miss. 1989); *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus*, 824 S.W.2d 92, 98 (Mo. Ct. App. 1992); *see also* Ala. State Bar., Formal Op. 1986-02 (1988); Ill. State Bar Ass'n, Advisory Op. 94-13 (1995) [hereinafter Ill. Op.]; Miss. Bar, Ethics Op. 144 (1988); Neb. Lawyer's Advisory Comm., Op. 12-09 (2012); Utah State Bar Ethics Advisory Comm., Op. 06-02 (2006).

[41] *Fed. Land Bank*, 127 F.R.D. at 479.

[42] *Id.* (internal quotation marks omitted).

product he creates."[43] As these jurisdictions view the matter, "the client is paying for the end result" and "the lawyer's work product is the tool used by the lawyer to reach the end result."[44] They reason that a lawyer's internal documents "reflect the candid, rough and blemished private thoughts of the lawyer" and that the lawyer's interest in them outweighs any value in their disclosure.[45]

In 2015, the Standing Committee on Ethics and Professional Responsibility of the American Bar Association (the "ABA Committee") issued a formal opinion adopting a version of the end-product approach (the "ABA Opinion").[46] The ABA Committee opined that attorneys should be required to produce:

- any materials provided to the lawyer by the [client];

- legal documents filed with a tribunal—or those completed, ready to be filed, but not yet filed;

- executed instruments like contracts;

- orders or other records of the tribunal;

- correspondence issued or received by the lawyer in connection with the representation of the [client] on relevant issues, including email and other electronic correspondence that has been retained according to the firm's document retention policy;

---

[43] *Corrigan*, 824 S.W.2d at 98.

[44] *Fed. Land Bank*, 127 F.R.D. at 479.

[45] Ill. Op., *supra*, at 6.

[46] ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 471 (2015).

14

- discovery or evidentiary exhibits, including interrogatories and their answers, deposition transcripts, expert witness reports and witness statements, and exhibits;

- legal opinions issued at the request of the [client]; and

- third party assessments, evaluations, or records paid for by the [client].[47]

The ABA Committee opined that attorneys should not be required to produce:

- drafts or mark-ups of documents to be filed with a tribunal;

- drafts of legal instruments;

- internal legal memoranda and research materials;

- internal conflict checks;

- personal notes;

- hourly billing statements;

- firm assignments;

- notes regarding an ethics consultation;

- a general assessment of the [client] or the [client's] matter; and

- documents that might reveal the confidences of other clients.[48]

After drawing these broad distinctions, the ABA Opinion created an exception under which "when a lawyer has been representing a client on a matter that is not completed and the representation is terminated" the lawyer should produce "materials that are: (1) internal notes and memos that were generated primarily for the lawyer's own purpose in working

---

[47] *Id.* at 5-6 (footnotes omitted).

[48] *Id.* at 6.

on the [client's] matter, (2) for which no final product has emerged, and (3) the materials should be disclosed to avoid harming the [client's] interest."[49] The ABA Opinion posited that this modified end-product approach preserves access "to those materials that would likely harm the client's interest if not provided," thereby satisfying the requirements of Rule 1.16(d).[50]

In my view, the cases applying the entire-file approach are more persuasive and consistent with other aspects of Delaware law governing the attorney-client relationship. The Delaware Supreme Court has stated that "[i]n all relations with his client, an attorney is bound to the highest degree of fidelity and good faith. Strict adherence to this rule of conduct is required by time-honored, deeply rooted concepts of public policy."[51] The preamble to the Delaware Lawyers' Rules of Professional Conduct calls for the rules to be "interpreted with reference to the purposes of legal representation and of the law itself."[52] As other decisions adopting the majority rule have observed, the entire-file approach best comports with an attorney's heightened duties to his or her clients and the candor and transparency that characterize the attorney-client relationship.

---

[49] *Id.*

[50] *Id.* at 5.

[51] *Melson v. Michlin*, 223 A.2d 338, 344 (Del. 1966).

[52] Del. Lawyers' R. Prof'l Conduct pmbl. ¶ 14.

Morris Nichols did not produce its entire litigation file. Because this decision has adopted the entire-file approach, Morris Nichols shall produce its entire litigation file. This aspect of the Buhannics' motion is granted.

## B. The Request For A Sanction

The Buhannics next ask me to penalize Morris Nichols for not previously producing the firm's entire litigation file. They do not explain why a sanction would be appropriate, but they are proceeding *pro se*, and a court is obligated to "look to the underlying substance" of a *pro se* litigant's filings.[53] One basis for a penalty might be as a sanction for contempt. The Buhannics also might be envisioning a sanction for breach of an ethical obligation. Neither theory supports a penalty on the facts presented.

A trial court can hold a party in contempt when it is bound by an order, has notice of it, and nevertheless violates it.[54] Whether a party should be held in contempt is a discretionary matter for the court.[55] Morris Nichols sought to comply with the Litigation File Order. Morris Nichols produced the materials called for by the ABA Opinion. In the absence of applicable Delaware authority, that was a reasonable approach. A finding of contempt is not warranted.

---

[53] *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008) (Strine, V.C.); *see also Vick v. Haller*, 1987 WL 36716, at *1 (Del. Mar. 2, 1987) (TABLE).

[54] *Arbitrium (Cayman Is.) Handels AG v. Johnston*, 1997 WL 589030, at *3 (Del. Ch. Sept. 17, 1997).

[55] *Dickerson v. Castle*, 1991 WL 208467, at *3 (Del. Ch. Oct. 15, 1991).

A trial court does not have jurisdiction to sanction a lawyer or a law firm for ethical misconduct unless the violation "taints the proceeding, thereby obstructing the orderly administration of justice."[56] Otherwise, the Delaware Supreme Court exercises "sole and exclusive jurisdiction over matters affecting governance of the Bar."[57] Morris Nichols' conduct has not tainted the fairness of this proceeding. The case is currently stayed, and Morris Nichols took a reasonable position in response to the Buhannics' request.

Imposing a penalty on Morris Nichols is not warranted. This aspect of the Buhannics' motion is denied.

## III.   CONCLUSION

Within fifteen days of the date of this decision, Morris Nichols shall make a production consistent with the entire-file approach. Within thirty days of the date of this decision, the senior member of the legal team responsible for representing the Buhannics shall submit an affidavit confirming compliance with this decision. The request for the imposition of penalties on Morris Nichols and the request to lift the stay are denied.

---

[56] *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221 (Del. 1990).

[57] *Id.* at 218; *accord Crumplar v. Superior Court ex rel. New Castle Cty.*, 56 A.3d 1000, 1009 (Del. 2012) ("Absent conduct that prejudicially disrupts the proceeding, trial judges have no independent jurisdiction to enforce the Rules of Professional Conduct.").